Ernest McMILLAN, Appellant,

v.

UNITED STATES, Appellee.

No. 10280.

District of Columbia Court of Appeals.

Argued Nov. 10, 1976.

Decided May 25, 1977.

Louis Fireison, Washington, D.C., appointed by this court, for appellant.

Mary H. Weiss, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Edward D. Ross, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, KERN and GALLAGHER, Associate Judges.

PER CURIAM:

Appellant was convicted of robbery after trial by jury. His appeal presents for our determination whether the exculpatory statement he made upon being stopped by police near the scene of the crime *before* he was placed under arrest was the product of custodial interrogation proscribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and hence erroneously received in evidence against him at trial.[1]

The facts relevant to appellant's *Miranda* contention are as follows: A police officer on duty in the early morning hours received over his cruiser radio a "lookout" for a four-door wine or burgundy-colored car with certain digits in the license tag relayed by another officer from the scene of a purse snatching where he had responded to complainant's screams. The "receiving" officer, several minutes later, stopped a car driven by appellant because it "generally fit" the description of the car in the lookout as to color, license tag and the number of its passengers.[2] The officer testified that he would not let appellant go until he received a complete lookout. Thereafter, the officer took action in the following sequence: He ran the license tag number and the driver's name (appellant) "through the computer";[3] he asked the complainant to be brought from the scene of the robbery to the place of the stop; the officer advised appellant in answer to his question why he had been stopped that "there had been a robbery previously . . . [and] [h]is car fitted the description of the get-away vehicle"; and, the officer "flashed [his] flashlight into the interior of appellant's car,"[4] observed "a small bag" on the floor of the passenger side and "directed a question to the occupants of the car whose bag that was . . . [and] Mr. McMillan [appellant] answered [the] question, stating it [belonged to] a hitchhiker they had picked up and he left it in the car." The officer had *not* advised appellant of his *Miranda* rights. Within minutes the complainant arrived and identified appellant's passenger as the man who had taken her bag. The prosecution at trial introduced appellant's statement, over objection, in contradiction to defense testimony that one of the passengers had taken complainant's bag without the knowledge of appellant who was driving the car.

Appellant presents the following syllogism in urging reversal and retrial as a

---

1. Appellant also urges that the evidence was insufficient to support his conviction. The complainant testified that as she stood at a bus stop with her tote bag on the pavement next to her leg she felt something move and saw a man take her bag and run and jump into a car with its door standing open which then took off "very fast" (Record at 7); she ran after the car screaming (Record at 8), and although there were "very few" cars on the street at that hour (Record at 4, 11), the auto did not stop in response to her cries; and she discovered her bag and the "bag snatcher" in appellant's car which the police had stopped a few blocks away and several minutes later (Record at 36). Appellant's exculpatory statement upon being stopped (Record at 52), which was at variance with his own witness' testimony at trial (Rec-

ord at 157), was received in evidence. We are persuaded upon this record that appellant's insufficiency-of-the-evidence argument is without merit.

2. The car appellant was driving was a two-door Ford Thunderbird, brown in color with a black vinyl top.

3. We assume this was a "WALES" (Washington Area Law Enforcement System) check to determine if the vehicle driven by appellant was listed as stolen and if appellant was "wanted."

4. The incident occurred before 6 a.m. in the month of December.

**914**

result of the trial court's admission into evidence of his exculpatory statement in violation of *Miranda, supra. Miranda* proscribes custodial interrogation and bars from evidence at trial any statement, exculpatory or incriminatory, made during such interrogation.[5] *Miranda* expressly defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. Here, appellant points out, the officer stopped the car he was driving and detained him while awaiting the arrival of the purse-snatching victim from a few blocks away, thereby depriving appellant of his freedom of action is a significant way. Appellant concedes that *Miranda, id.* at 477-78, 86 S.Ct. at 1629, expressly permits "[g]eneral on-the-scene questioning . . . in the fact-finding process [because] [i]n such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." However, he argues that by the time the officer asked the question here he was not engaged in general "factfinding" because he already had information of a crime having been committed and had observed that the car driven by appellant "generally fit" the getaway car described in the lookout for the perpetrator of that crime. Moreover, appellant argues, the question concerning ownership of the bag was in effect directed solely to appellant as the driver and the one who had asked why they had been stopped.

■ In *Beckwith v. United States,* 425 U.S. 341, 345, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the Supreme Court rejected the assertion that in noncustodial circumstances the principles of *Miranda* should apply

when a police investigation has *focused* on a suspect. The Court reiterated the principle that it was the *"custodial* nature of the interrogation which triggered the necessity" for *Miranda* warnings. *Id.* at 346, 96 S.Ct. at 1616 (emphasis in original). We view this stop upon a radio lookout and the brief detention on the spot until the complainant could arrive "investigatory" police work, *Irby v. United States,* D.C.App., 342 A.2d 33, 37 (1975), and permissible under the authority conferred by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the Court expressly approved the practice of an officer investigating unusual circumstances he observes, detaining briefly a person, and "mak[ing] reasonable inquiries." *Id.* at 30, 88 S.Ct. 1868. In *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), the Court held "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily *while obtaining more information,* may be most reasonable in light of the facts known to the officer at the time." (Emphasis added.)[6]

Accordingly, we conclude that the response to the question was not the product of a custodial interrogation and the trial court properly allowed the answer into evidence. The judgment of conviction must be and hereby is

*Affirmed.*

---

5. Certain modifications have been subsequently made by the Supreme Court to this rule, which are not here pertinent.

6. *See Allen v. United States,* 129 U.S.App.D.C. 61, 390 F.2d 476 (1968).