Harold L. FORD, Appellant,

v.

UNITED STATES, Appellee.

No. 10822.

District of Columbia Court of Appeals.

Argued April 12, 1977.

Decided July 15, 1977.

3. Pretrial voir dire also had provided a searching inquiry into possible prejudice.

W. Gary Kohlman, Public Defender Service, Washington, D. C., for appellant. Frederick H. Weisberg, Public Defender Service, Washington, D. C., appointed by the court, also entered an appearance.

Sallie R. Helm, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, and Mary Ellen Abrecht, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellant Ford was convicted in a nonjury trial of possession of narcotics paraphernalia in violation of D.C. Code 1973, § 22-3601. The sole issue before this court on appeal is whether the trial court erred in denying appellant's motion to suppress the narcotics paraphernalia seized following a traffic stop and his admission that he possessed such contraband. We affirm.

On May 30, 1975, Officer Gates of the Metropolitan Police Department was seated with a fellow officer in a patrol car parked at 4th and M Streets, N.W., in the District of Columbia, when he observed appellant leaving an automobile which was standing nearby.

Officer Gates knew appellant from previous police investigations;[1] he knew the type of car appellant usually drove and noted that he was exiting from a different one. Officer Gates knew appellant also as an admitted narcotics user. As the officer and his partner watched, appellant entered the Fifth Street Market, known as a location of narcotics trafficking. After several minutes, appellant emerged from the market, went back to the automobile from which he had exited and, followed by the police car, proceeded approximately one block and stopped the car.

Suspecting that the car appellant had been driving was stolen, Officer Gates approached it and asked to see appellant's operator's permit and vehicle registration card. It is unclear from the record whether the permit and registration were actually produced or, if so, whether the registration was in appellant's name. At the suppres-

---

1. This fact was stipulated to by appellant's counsel during the suppression hearing.

sion hearing, Officer Gates testified that appellant turned over both documents and explained that the car belonged to his sister. Appellant testified that he did not have a vehicle registration card on his person at the time of the stop.

While his partner checked to see if the car was listed as "wanted"· in the Washington Area Law Enforcement System computer (WALES), Officer Gates talked with appellant about a fugitive warrant which had been outstanding. The officer then asked appellant if he was still using drugs and appellant answered in the negative, adding that all he had on his person was "works." Appellant then displayed the narcotics paraphernalia in question and was promptly arrested.

Appellant now contends that the stop of the automobile and the check of his permit and the vehicle registration was a sham to interrogate him regarding his possible possession of narcotics. Consequently, says appellant, his admission regarding the narcotics paraphernalia should have been suppressed, coming as it did, before any *Miranda*[2] warnings were given. We disagree.

█ There is, in our view, a demonstration in the record of articulable reasons for suspicion of criminal activity sufficient to warrant an investigatory stop of the automobile. Appellant was known to Officer Gates as a narcotics user, and his first observation was that the automobile appellant was driving was not the one he usually drove. Appellant was then seen to exit the automobile, enter and shortly thereafter leave a place where, in the past, narcotics had been made readily available. Suspecting that the automobile had been stolen and that it was being used in criminal activity, Officer Gates was justified, in our opinion, in making an investigatory check of appellant's permit and the registration of the automobile. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

We have held most recently in *McMillan v. United States*, D.C.App., 373 A.2d 912 (1977), that in the process of such investiga-

tory police work it is permissible for the officer to ask follow-up questions and to detain the driver long enough for a WALES check to be run. *See Crawford v. United States*, D.C.App., 369 A.2d 595 (1977); *United States v. Weston*, 151 U.S. App.D.C. 264, 268, 466 F.2d 435, 439 (1972).

As we have noted in *Smith v. United States*, D.C.App., 295 A.2d 64 (1972), *cert. denied* 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973):

> [T]he officer did not know at the time he stopped appellant that a crime had in fact been committed, but he certainly had reasonable basis for believing that further investigation was indicated. . . .
> [*Id.* at 67.]

Having determined that the initial stop of the automobile operated by appellant and the subsequent WALES check were reasonable, our question narrows to a determination of whether Officer Gates' questions crossed the fine line between investigation and custodial interrogation. We hold that they did not.

█ It must be remembered that *Miranda* dealt with "the admissibility of statements obtained from an individual who is subjected to *custodial* police interrogation." *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S.Ct. 1602, 1609, 16 L.Ed.2d 694 (1966) (emphasis supplied). *Miranda* was not meant to apply to investigative questioning that occurs in a noncustodial setting. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50· L.Ed.2d 714 (1977); *Beckwith v. United States*, 425 U.S. 341, 345, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *United States v. Calhoun*, D.C.App., 363 A.2d 277 (1976). We have noted that more is needed to constitute an arrest than merely "stopping a person . . . and putting questions to him as to his actions . . . ." *White v. United States*, D.C.App., 222 A.2d 843, 845 (1966).

Recently, in *Crawford v. United States, supra*, we held that it was at the point where police officers, after a traffic stop and after having observed a gun in the stopped automobile, told the occupants that

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

they would have to be taken to police headquarters, that the "limited investigatory stop . . . turned into an arrest situation." *Id.* at 598. Such a juncture was never reached in the instant case prior to appellant's voluntary admission.

■ Here, within the context of a valid traffic stop, the police officer asked what amounted to an investigative question based on aroused suspicion in the officer's mind brought on by appellant's previously admitted narcotics use, coupled with his presence at a location where narcotics were known by the officer to be readily obtainable. When presented with suspicious circumstances, the first words uttered by the officer do not have to be a recitation of *Miranda* warnings.

> Common sense tells us otherwise. Interrogation forbidden by *Miranda* is not a single question at the threshold of the encounter . . .. [*Owens v. United States*, D.C.App., 340 A.2d 821, 824 (1975).]

The distinction between investigative questioning and custodial interrogation was further explained by this court in *Green v. United States*, D.C.App., 234 A.2d 177 (1967). There, as in the instant case—

> Appellant . . . [was] detained only because the officer felt that [his] conduct required investigation. Appellant was questioned briefly, and his answers were uncoerced and voluntary. We do not believe this constitutes custodial interrogation within the meaning of *Miranda* . . .. [Id. at 179.]

*See also McMillan v. United States, supra.* We conclude that, viewed in light of the record before us, appellant's admission was properly found to be uncoerced and voluntary.

We conclude also that the trial court properly rejected appellant's contention that the traffic stop was a sham employed by the officer to probe for a drug-related offense. *See Lyles v. United States*, D.C. App., 271 A.2d 793, 794 (1970).

Finding no error, the trial court's determination that both appellant's statement and the narcotics paraphernalia were admissible is

*Affirmed.*