STATE OF HAWAII, Plaintiff-Appellant, *v.* JAY BAKER
PATTERSON, Defendant-Appellee, and CHRISTEL
FORTH, Defendant

NO. 6076

JULY 21, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY MENOR, J.

The defendant Jay Baker Patterson was indicted for the
offense of burglary in the first degree. His pretrial motion to
suppress certain statements he had made to the police was
granted by the trial court. From the order of suppression the
State appeals.

Three police officers had responded, at approximately
3:00 a.m., to a report of a possible burglary in progress at a
private residence in the Kona area. Officer George Pereira

was the first to arrive at the scene followed by the other officers. He drove his vehicle up the driveway and parked directly behind a Chevrolet sedan which was parked just outside of the carport with its lights off. The defendant was standing next to the automobile's left rear fender. As the officer came to a stop and started to leave his vehicle, the defendant walked towards him. Officer Pereira recognized the defendant as a "known police character" and greeted him by his first name.

The officer immediately asked the defendant what he was doing there but received no answer. The officer next asked whether he lived there and whether he had permission to be there and the defendant answered both questions in the negative. The officer then asked about the ownership of the vehicle in the driveway and the defendant said it belonged to a friend. At that point Sgt. Kenneth Uyeda, who had been looking around, called Officer Pereira's attention to a woman's purse lying on the front seat of the vehicle. In this connection Officer Pereira testified:

> "I observed, also, the numerous farm tools, inside of the car — in the rear seat and in the trunk area of the car. Which I asked the defendant, if these things had belonged to him, being that it was in his friend's vehicle. And he told me, 'no.' "

That was the extent of the police interrogation, and it was at that point that Officer Pereira placed the defendant under arrest "for examination burglary." He was then driven to the Kona police station by the officer. On the way the defendant volunteered additional incriminating statements. At the station he was, for the first time, advised of his *Miranda* rights, which he waived. Following this waiver he willingly gave a more detailed account of his activities that evening.

The determinative issue in this case is whether the defendant should have been given the *Miranda* warnings sometime during the questioning conducted by the police at the scene of the alleged offense. We hold that the warnings need not have been given.

An individual in police custody may not be subjected to interrogation without first being advised of his *Miranda*

rights. *State v. Kalai,* 56 Haw. 366, 537 P.2d 8 (1975). Custodial interrogation, which would require the police to advise a person of his constitutional rights before interrogation, was defined by the Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 444 (1966), as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way."

In *State v. Kalai, supra,* where questioning took place at the home of the defendant, we observed that the *Miranda* rule was not confined to the station house setting, and that it did not lose its relevancy simply because the interrogation was taking place in familiar surroundings. And while the focus of the investigation upon the defendant as a factor in triggering the application of the *Miranda* rule could have been more clearly and more definitively expressed, we nevertheless intimated therein that *Miranda* warnings must be given to the defendant before police interrogation where the investigation has zeroed in upon the defendant as a prime suspect to the extent that the police would have been justified in arresting him without a warrant on probable cause. In *Kalai,* however, the police were without knowledge of facts sufficient to effect an arrest. Neither were the compulsive factors with which *Miranda* was concerned shown to exist so as to support the conclusion that the defendant had been subjected to custodial interrogation. *Kalai,* incidentally, was an after the fact interview and did not involve on-the-scene interrogation.

Since our decision in *Kalai,* the Supreme Court has rendered a further clarification of what it meant by custodial interrogation. In *Beckwith v. United States,* 425 U.S. 341 (1976), the Court rejected the focus test as an alternative standard.[1]

---

[1]For discussions of focus as an alternative standard, see Graham, What is "Custodial Interrogation?": California's Anticipatory Application of Miranda v. Arizona, 14 UCLA L.Rev. 59, 112 (1966); Smith, The Threshold Question in Applying Miranda: What Constitutes Custodial Interrogation?, 25 S.C.L.Rev. 699, 706 (1974).

"Although the 'focus' of an investigation may indeed have been on [the defendant] at the time of the interview . . ., he hardly found himself in the custodial situation described by the *Miranda* Court as the basis for its holding. *Miranda* implicitly defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " 425 U.S. at 347. (Emphasis in original)

*Beckwith* was followed by *Oregon v. Mathiason,* 429 U.S. 492 (1977). And although we might not have necessarily reached the same results, under the Hawaii Constitution,[2] as did the majority of the Supreme Court in *Mathiason,* we think that the following observations by the Court are generally sound:

"[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." 429 U.S. at 495.

We adhered basically to these principles in *Doe v. Chang,* 58 Haw. 94, 564 P.2d 1271 (1977). In that case the petitioners were the target of a departmental investigation for welfare

---

[2]The protections to which an individual is entitled under Miranda also stem from an independent source in the Hawaii Constitution's privilege against self-incrimination. State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971). Cf. Oregon v. Mathiason, supra, at 496 (Marshall, J., dissenting).

fraud. They sought to enjoin the Department of Social Services and Housing from conducting investigatory interviews with the petitioners without first giving them the *Miranda* warnings. In affirming the trial court's dismissal of their petition, we said:

> "Plaintiffs have not alleged any deprivation of their freedom of action in connection with the investigatory interrogations complained of here, other than the constraint imposed by their assumption that cooperation with the questioners was a condition of continued welfare benefits, nor have they alleged that they were informed that failure to provide such cooperation would result in any disadvantage to them."

But while focus of the investigation upon the defendant, standing alone, will not trigger the application of the *Miranda* rule, *Beckwith v. United States, supra,* it nevertheless continues to be an important factor in the determination of whether the defendant was subjected to custodial interrogation. *State v. Kalai, supra; State v. Bohanan,* 220 Kan. 121, 551 P.2d 828 (1976); *Hancock v. Estelle,* 558 F.2d 786 (5th Cir. 1977). Where the police, prior to questioning the individual, are in possession of facts sufficient to effect an arrest without a warrant based on probable cause, it is less likely that the person confronted would be allowed to come and go as he pleases. The degree of this likelihood may, of course, depend upon the nature and gravity of the offense, as well as other circumstances. In any event, whether the defendant was in custody or otherwise deprived of his freedom of action for *Miranda* purposes is to be determined from the totality of the circumstances, objectively appraised. *Lowe v. United States,* 407 F.2d 1391 (9th Cir. 1969); *cf. State v. Tsukiyama,* 56 Haw. 8, 525 P.2d 1099 (1974). These would include the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and all other relevant circumstances.

The adoption of the *Miranda* rule, however, was never intended to hamper law enforcement agencies in the exercise of their investigative duties or in the performance of their

traditional investigatory functions. *Miranda v. Arizona, supra*. In that case the Court said:

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477.

Field interviews by the police with suspects or witnesses are not constitutionally proscribed. *State v. Tsukiyama, supra*. Police officers are not precluded from making general on-the-scene inquiries of citizens to determine whether crime has been committed or is in progress. *Lowe v. United States, supra*. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Court expressly approved the practice of an officer investigating unusual circumstances which he observes, detaining the suspected person briefly, and "mak[ing] reasonable inquiries." 392 U.S. at 30. And in *Adams v. Williams*, 407 U.S. 143, 146 (1972), the Court held that a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *See also McMillan v. United States*, 373 A.2d 912 (D.C.App. 1977).

At what point police interrogation ceases to be permissible general on-the-scene questioning and becomes custodial interrogation, prohibited under *Miranda* without prior warnings, is at the crux of the problem in these situations. *See, generally*, Annotation, 31 A.L.R.3d 565. No precise line can be drawn because each case must necessarily turn upon its own facts and circumstances, but we think that the California court in *People v. Manis*, 268 Cal. App.2d 653, 669, 74 Cal. Rptr. 423, 433 (1969) came as close as any to delineating, generally, the outer parameters beyond which on-the-scene interviews may not proceed without the *Miranda* warnings:

"[P]ersons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest

or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive.''

In this case the police were responding to a report of a possible burglary on the premises. Other than the report, the police were not in possession of facts indicating that a burglary had in fact been committed or that it was in progress. Immediately upon their arrival, the police found nothing to verify the report. The presence of the defendant in the driveway, while strengthening their suspicions, did not constitute confirmation that the crime had been committed or was being committed. In the exercise of their investigatory functions, they were required to determine on the spot whether criminal activity was afoot, and whether they should arrest the defendant, or whether they should investigate further, or whether they should take no action against him. A temporary detention, coupled with a minimum amount of questioning, was proper and obviously necessary under the circumstances to assist the police officers in making these determinations. In *United States v. Hickman*, 523 F.2d 323, 327 (9th Cir. 1975), *cert. denied* 423 U.S. 1050, the court said:

"An officer making an investigatory stop will often have some suspicion of the identity of the person apprehended and of his prior unobserved activity. It is the very purpose of the investigatory stop to allow the officer to confirm or deny these suspicions by reasonable questioning, rather than forcing in each instance the 'all or nothing' choice between arrest and inaction.''

The questioning in this case was not conducted under coercive circumstances. No guns were drawn and kept upon the defendant. Neither was he confronted and subjected to an overbearing show of force. After greeting the defendant with a "Hi, Jay,'' Officer Pereira made his inquiries while the other two officers were looking about the premises. The interview itself was brief. What he was doing on the premises (to which the defendant made no response); whether he lived there; whether he had permission to be there; to whom the

Chevrolet automobile in the driveway belonged; and whether the tools in his friend's car belonged to him, were the only questions asked of the defendant. The questions were not couched in accusatory terms. These were factfinding inquiries designed to clarify the situation rather than to confirm information which the police already had in their possession or to coerce the defendant into making statements of an incriminatory nature. The police at the time were without knowledge of tools having been taken from the premises, and no probing questions were asked as to where the tools had come from, or how they happened to be in his friend's car, or what the defendant's exact connections with the tools were. Officer Pereira's questioning was properly confined and limited to that which was minimally necessary for him to decide upon a reasonable course of investigatory action.[3]

In *State v. Wynn*, 114 Ariz. 561, 562 P.2d 734 (1977), the Arizona court was faced with a somewhat similar situation. The police officer in that case was on routine patrol at approximately 11:40 p.m. when he saw the defendant's automobile lights turn on and saw the vehicle hurriedly leave its parked position on a dirt cul-de-sac next to a fenced lumber yard. The officer followed the defendant for almost a mile while the latter drove through several stop signs and eventually drove into a trailer park. At that point, the officer stopped the defendant for the purpose of questioning him as to his reason for being parked near the lumber yard at that hour of the evening. While checking the defendant's driver's

---

[3]The defendant argues that when he admitted that he had no permission to be on the premises, the police then had probable cause to arrest him for the offense of trespass (a violation and not a crime in this case, see HRS §§ 701- 198(5) and 708-815), thereby triggering the application of the Miranda rule. Under other factual circumstances, this contention might well have been entirely meritorious. The police, however, were directed to investigate and to confirm or deny a possible burglary report, and the defendant's presence on the premises without permission was only a threshold element of a possible burglary offense. Moreover, it was the fact of his admittedly unauthorized presence which confirmed the authority of the police to detain him for further limited questioning. The only questions asked thereafter concerned the ownership of the vehicle and whether the tools in his friend's car belonged to him.

license, the officer noticed a large roll of fencing wire in the back of the defendant's car. When asked where he had obtained the wire, the defendant responded that he had purchased the wire approximately two days previously from a man whom he did not know. He explained further that he used the wire in his job as a construction worker. Contemporaeous independent investigation by other officers showed that the wire was probably stolen from the lumber yard. The defendant was subsequently charged with the offense of burglary. In disposing of the defendant's contention that the statements he made immediately after the stop concerning his possession of the wire should have been suppressed, the appellate court said:

"Without question, appellant was temporarily deprived of freedom of action when he was stopped. Under the circumstances, the officer had a founded suspicion that criminal activity might be afoot and the stop was by no means unreasonable . . . . However, the fact that an officer is suspicious of an individual is not the test of whether *Miranda* warnings must be given prior to questioning . . . . Limited questioning during a reasonable investigatory detention is permissible when the confrontation has not reached the 'interrogation stage.' . . . The officer's questioning was non-accusatory in nature and was merely in furtherance of a proper preliminary investigation. The trial court was correct in permitting these statements into evidence." 114 Ariz. at 564, 562 P.2d at 737.

And in *McMillan v. United States, supra,* a police officer on duty in the early morning hours was instructed via police radio to be on the alert for a certain automobile, in which persons accused of purse snatching were riding. A few minutes later the officer stopped the automobile driven by the defendant because it generally fit the description of the suspected vehicle. Over his car radio he requested that the victim be brought to the scene of the stop. While waiting for the complainant to arrive, the officer looked into the vehicle and saw a small handbag on the floor of the passenger side. When he questioned the occupants of the vehicle regarding

the ownership of the bag, the defendant replied that it belonged to a hitchhiker he had picked up earlier and that the latter had left it in the car. Shortly thereafter the victim arrived and identified the bag as hers and the defendant as the person who had taken her bag. The court held that the brief questioning following the stop was part of investigatory police work and did not constitute custodial interrogation. *See also, Lowe v. United States, supra,* and the cases cited therein.

Reversed and remanded.

*Douglas Halsted,* Deputy Prosecuting Attorney for plaintiff-appellant.

*D. Barclay Bryan (Kai, Dodge & Evensen,* of counsel) for defendant-appellee.