**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000412
29-JUN-2020
07:45 AM

NO. CAAP-19-0000412

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
KEENAN MASAO NAKAGAWA, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(HONOLULU DIVISION)
(CASE NO. 1DTA-18-00222)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Wadsworth, JJ.)


Defendant-Appellant Keenan Masao Nakagawa (**Nakagawa**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on November 28, 2018 (**Order re Suppression and Conviction**),[1] and the Notice of Entry of Judgment and/or Order and Plea/Judgment,[2] filed on February 11, 2020, in the District Court of the First Circuit, Honolulu Division (**District**

---

[1]    The Honorable Trish Morikawa presided.

[2]    The Honorable William M. Domingo presided.

**Court**) (**Final Judgment**).[3/]  Nakagawa was convicted of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2019).[4/]

Nakagawa raises a single point of error on appeal, contending that the District Court erred in denying his motion to suppress his "statements," including his performance on a Standard Field Sobriety Test (**SFST**).  "We review the circuit court's ruling on a motion to suppress *de novo* and must look to the entire record on appeal to determine whether the ruling was right or wrong."  State v. Joseph, 109 Hawaiʻi 482, 493, 128 P.3d 795, 806 (2006) (citations and internal quotation marks omitted).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Nakagawa's point of error as follows:

Citing State v. Tsujimura, 140 Hawaiʻi 299, 400 P.3d 500 (2017), Nakagawa first argues that the District Court erred

---

[3/]    An unsigned copy of this judgment was filed on April 1, 2019, and on February 11, 2020, the Final Judgment was entered to correct this error.

[4/]    HRS § 291E-61(a)(1) states, in relevant part:

> **§ 291E-61 Operating a vehicle under the influence of an intoxicant.**  (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> > (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

2

in denying his motion to suppress because any statements he made after he was stopped for a traffic violation violated his pre-arrest right to remain silent because he was not advised of his right to remain silent at the time of the stop.  This argument is without merit.

In State v. Uchima, SCWC-17-0000081, 2020 WL 2536669, at *3, *14-15 (Haw. May 19, 2020), the supreme court rejected a similar claim that a defendant's verbal and non-verbal responses were obtained in violation of the pre-arrest right to remain silent that was recognized in Tsujimura.  This case, like Uchima, does not involve the use of Nakagawa's silence against him.  Id. at *14.  Thus, Tsujimura is not applicable to this case.

Nakagawa also argues that he was subjected to a custodial interrogation without first being administered a Miranda[5] warning because, *inter alia*, he was in custody from the point where Honolulu Police Department (**HPD**) Officer Michael Aganos (**Officer Aganos**) stopped him.

Thus, we must examine whether, under the totality of the circumstances, Nakagawa's statements stemmed from custodial interrogation.  Nakagawa was not in custody merely because he was seized in connection with a traffic stop.  State v. Ah Loo, 94 Hawaiʻi 207, 211, 10 P.3d 728, 732 (2000).  To determine whether an interrogation is custodial, the totality of the circumstances analysis focuses on "the place and time of the interrogation, the

_____

[5]    See Miranda v. Arizona, 384 U.S. 436 (1966).

length of the interrogation, the nature of the questions asked, the conduct of the police, and [any] other relevant circumstances[.]"  Id. at 210, 10 P.3d at 731 (citing State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982)); see also State v. Kazanas, 138 Hawaiʻi 23, 35, 375 P.3d 1261, 1273 (2016) (reiterating same).  In this regard, the supreme court has acknowledged that "no precise line can be drawn" between "custodial interrogation," on the one hand, and "permissible general on-the-scene questioning," on the other.  Ah Loo, 94 Hawaiʻi at 210, 10 P.3d at 731 (citing State v. Patterson, 59 Haw. 357, 362, 581 P.2d 752, 755-56 (1978)) (brackets omitted).

Custodial interrogation is comprised of two components, "interrogation" and "custody."  Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273.  The totality of the circumstances test applies in determining whether there is *custodial* interrogation, "in the sense that the defendant is deprived of his or her freedom of action in any significant way."  Id.  In contrast, "the touchstone in analyzing whether 'interrogation' has taken place is whether the police officer 'should have known that his or her words and actions were reasonably likely to elicit an incriminating response from the defendant.'"  Id. at 38, 375 P.3d at 1276 (brackets and citation omitted).

In State v. Wyatt, 67 Haw. 293, 687 P.2d 544 (1984), where the defendant was briefly detained and therefore seized, but not in custody or coercively questioned, the supreme court

held that <u>Miranda</u> warnings were not required before she was asked if she had been drinking. <u>Wyatt</u>, 67 Haw. at 297-301, 687 P.2d at 548-50. The supreme court further concluded that the SFST that the defendant performed was not constitutionally infirm because the test sought only an exhibition of her physical characteristics of coordination, rather than communications or testimony, even though its purpose was to gather evidence of criminal conduct. <u>Id.</u> at 302-03, 687 P.2d at 551. In <u>Kaleohano</u>, the supreme court noted that if probable cause to arrest or sustained and coercive questioning were present, then questions posed by the police could amount to custodial interrogation. <u>State v Kaleohano</u>, 99 Hawaiʻi 370, 377, 56 P.3d 138, 145 (2002). The court concluded that because there was no probable cause to arrest the defendant, and in light of the fact that the officer did not subject the defendant to sustained and coercive questioning, the officer was not required to give the defendant a <u>Miranda</u> warning prior to asking her if she had been drinking. <u>Id.</u> at 377-78, 56 P.3d at 145-46.

Here, Officer Aganos testified that he was on duty on January 4, 2018, at approximately 1:15 a.m., when he stopped Nakagawa. Officer Aganos was traveling east on Kuhio Avenue in a blue-and-white vehicle in lane 2, the right lane, while Nakagawa was in lane 1, the left lane next to a center divider on a two-way street. After observing Nakagawa make sharp movements side to side, which were not normal but also not a violation, Officer

Aganos changed to lane 1 behind Nakagawa. Prior to the intersection of Nahua and Kuhio, Officer Aganos observed Nakagawa cross a double solid yellow center line into the oncoming traffic lane. Officer Aganos testified that, based on his experience and training, at no time are drivers supposed to cross the double solid yellow lines. Nakagawa drove over the double solid yellow lines for 20 feet before stopping at the intersection, still over the double solid yellow lines. There was oncoming traffic in the opposite lane. After Nakagawa made a left turn, Officer Aganos initiated a traffic stop; Nakagawa was in the driver's seat.

Officer Aganos informed Nakagawa that he pulled him over for crossing the double solid yellow lines, and then requested his driver's license, registration, and insurance. Nakagawa gave Officer Aganos his driver's license, but then just stared at him. During that time, Officer Aganos smelled a strong odor of an alcoholic beverage from Nakagawa's breath and observed that Nakagawa had watery, red, bloodshot eyes. Officer Aganos asked Nakagawa again for his registration and insurance to which Nakagawa responded that he had his driver's license. After again asking for the information, Nakagawa attempted to hand Officer Aganos a bunch of paperwork from the glove box, but Officer Aganos declined to take it. Nakagawa's passenger then found the requested documents. While Officer Aganos wrote a traffic citation, HPD Officer Courtney Pahia-Lewis (**Officer Pahia-Lewis**) arrived, and he told her about his observation about the alcohol.

Officer Aganos testified that, at that point, the traffic stop turned into an OVUII investigation.

Officer Pahia-Lewis testified that Officer Aganos asked her to conduct the SFST on Nakagawa. Nakagawa was in his car when she approached him and asked if he would be willing to participate in an SFST. Nakagawa responded that yes, he would. Officer Pahia-Lewis then asked Nakagawa to step out of his vehicle, which he did. Before beginning the SFST, Officer Pahia-Lewis asked Nakagawa a series of medical rule-out questions. Nakagawa responded "no" to each of the questions. In response to the officer's instructions and queries as to whether Nakagawa understood the instructions, Nakagawa said he understood the instructions. After Nakagawa completed the SFST, he was arrested for OVUII.

As Nakagawa contends, he was detained or seized at the point that he was stopped by Officer Aganos for crossing over the double solid yellow lines. After Officer Aganos began speaking with Nakagawa, there was a reasonable suspicion that Nakagawa was operating a vehicle while intoxicated based upon his red, watery and bloodshot eyes, and the smell of alcohol, as well as the officer's earlier observation of Nakagawa's driving. State v. Barrickman, 95 Hawaiʻi 270, 274-77, 21 P.3d 475, 479-82 (App. 2001) (there was a reasonable suspicion to investigate driving while intoxicated based on defendant's glassy eyes and smell of alcohol on breath). However, without more, red, glassy eyes, and

imperfect driving, are insufficient to establish probable cause to arrest a person for OVUII. Kaleohano, 99 Hawaiʻi at 377-78, 56 P.3d at 145-46. Here, there was not probable cause to arrest Nakagawa for OVUII prior to his performance on the SFST. Nakagawa does not contend that he was subjected to sustained or coercive questioning. Under the totality of the circumstances, we cannot conclude that Nakagawa was in custody when he was asked whether he would agree to participate in an SFST. See id. at 377, 56 P.3d at 145.

"Field sobriety tests are designed and administered to avoid the shortcomings of casual observation." Wyatt, 67 Haw. at 302, 687 P.2d at 551 (brackets and citations omitted). As discussed above, Officer Aganos did not have probable cause to arrest Nakagawa for OVUII prior to the SFST. And, the right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against him or her, such as when a driver is asked to participate in an SFST. Id. As we discussed in State v. Sagapolutele-Silva, CAAP-19-0000491, 2020 WL 1699907 (Haw. App. Apr. 8, 2020), the Wyatt court held that since performance on an SFST was neither communication nor testimony, the trial court did not err by refusing to suppress the officer's SFST observations. Sagapolutele-Silva, 2020 WL 1699907 at *7 (citing Wyatt, 67 Haw. at 301-03, 687 P.2d at 550-51).

In addition, in <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 603-04 (1990), the United States Supreme Court rejected the contention that <u>Miranda</u> warnings are required prior to an inquiry as to whether a defendant understood SFST instructions, because the "focused inquiries were necessarily 'attendant to' the police procedure held by the court to be legitimate." Accordingly, asking Nakagawa whether he understood the instructions to the SFST did not implicate his right against self-incrimination. In <u>Sagapolutele-Silva</u>, we held that the defendant was already in custody, and thus the medical rule-out questions constituted a custodial interrogation because, *inter alia*, they were likely to elicit an incriminating response. <u>See</u> <u>id.</u> at *7-8. Here, however, Nakagawa was not in custody when he was asked medical rule-out questions and therefore was not thereby subjected to custodial interrogation. Nakagawa's performance on an SFST was neither communication nor testimony, and the trial court did not err by refusing to suppress the officer's SFST observations. <u>See</u> <u>id.</u>, at *7 (citing <u>Wyatt</u>, 67 Haw. at 301-03, 687 P.2d at 550-51). Accordingly, we conclude that the District Court did not err in denying Nakagawa's motion to suppress.[6]

---

[6]    In light of this conclusion, we need not address Nakamura's arguments that certain evidence should have been suppressed as "fruit of the poisonous tree," with the poisonous tree being a custodial interrogation without being advised of his <u>Miranda</u> rights.

For these reasons, the District Court's November 28, 2018 Order re Suppression and Conviction and February 11, 2020 Final Judgment are affirmed.

DATED: Honolulu, Hawaiʻi, June 29, 2020.

On the briefs:

Alen M. Kaneshiro,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge