**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000330
29-JUN-2020
07:50 AM**

NO. CAAP-18-0000330

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
VIOLET A.C. SEBAY, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(KĀNEʻOHE DIVISION)
(CASE NO. 1DTA-16-04016)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Violet A.C. Sebay (**Sebay**) appeals from an Amended Notice of Entry of Judgment and/or Order and Plea/Judgment entered on January 16, 2018 (**Judgment**), by the District Court of the First Circuit, Kāneʻohe Division (**District Court**).[1]  The District Court convicted Sebay of one count of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**),

_____

[1]  The Honorable Trish K. Morikawa presided.

in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2018).[2]

Sebay raises two points of error on appeal, contending that: (1) the District Court erred in denying her motion to suppress and to exclude all evidence adduced after the warrantless stop of her car, including all statements, responses and actions, including but not limited to her performance of a standardized field sobriety test (**SFST**); and (2) there was insufficient evidence to support Sebay's conviction for OVUII.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Sebay's points of error as follows:

(1) Primarily citing State v. Kim, 68 Haw. 286, 711 P.2d 1291 (1985), Sebay contends that the Honolulu Police Department's (**HPD**) officer (**Officer Wong**) that initiated a traffic stop of the vehicle that Sebay was driving did not have at least a reasonable basis of specific articulable facts to believe a crime had been committed before ordering Sebay out of the vehicle. Thus, Sebay argues, she was improperly detained and

---

[2] HRS § 291E-61(a)(1) provides:

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

ordered out of the vehicle.  In addition, Sebay argues that she was subjected to custodial interrogation without being advised of her <u>Miranda</u> rights.[3]  For these reasons, Sebay argues that all verbal statements and "non-verbal statements" made during the SFST should have been suppressed.  These arguments are without merit.

Officer Wong's testimony included, *inter alia*, that on October 22, 2016, at approximately 1:52 a.m., he was on duty, in his vehicle, in the parking lot of Kalapawai Café, when he saw a woman (later identified as Sebay) and another woman (**Passenger**) laughing and talking loudly as they jaywalked from an area that included Kailua Pub to a vehicle parked in the Kalapawai Café lot.  Sebay got into the driver's seat and Passenger got into the front passenger's seat of the vehicle.  Sebay started the car, drove past two stop signs without stopping, and continued on.

Officer Wong followed Sebay as she drove down Kailua Road toward Castle Hospital (**Castle**).  Sebay's vehicle weaved in a "snake-like manner," back and forth in the left lane, for about two miles.  Then, her passenger-side tires crossed about a foot over the white, skip-dash lane marking, into the right lane, for about twenty-five feet, before she veered back into the left lane.

Officer Wong engaged his lights and siren to initiate a traffic stop on the shoulder of the road, before the

---

[3]     See <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

intersection. Although Sebay had time to pull over onto the shoulder or at a bus stop before crossing the intersection, she drove through the intersection and parked halfway onto an island. Officer Wong's vehicle was blocking a lane of the highway, so he asked her to park on Auloa Road instead. Officer Wong testified that although Sebay took an appropriate amount of time to pull over, she did so in an unsafe area. As directed by the officer, Sebay drove to Auloa Road and parked.

Officer Wong and a second officer (**Corporal Krekel**) who had been parked next to Officer Wong approached Sebay's vehicle. When Officer Wong asked Sebay for her license, registration, and insurance, Passenger stated that Sebay had been raped and they were taking her to the hospital. Officer Wong asked why they bypassed Castle and, as they conversed, noticed the smell of alcohol coming from Sebay, as well as her red, glassy and watery eyes. After what Officer Wong described as a short conversation, Officer Wong asked Sebay if she would like to participate in the SFST, and she agreed to do so. Officer Wong testified that, at that point, he did not have probable cause to arrest Sebay for OVUII.

Corporal Krekel also testified that, when Officer Wong made the traffic stop, there was no probable cause to arrest her. When Corporal Krekel spoke to Sebay, he also noticed that her eyes were red and watery, and that her breath smelled of alcohol. He asked her to step out of the vehicle. Sebay complied, and

Corporal Krekel observed her sway about one and one-half inches in a circular motion. Although he suspected that she may have been impaired, he testified that he would not have arrested her without first conducting the SFST. After Corporal Krekel asked Sebay certain medical rule-out questions, he administered the SFST, and Sebay was then arrested for OVUII.

This case is distinguishable from <u>Kim</u> because in <u>Kim</u>, the officer asked Kim to step out of his vehicle based only on an observation of a traffic infraction, *i.e.*, failing to stop or signal before turning right on a red light. 68 Haw. at 288, 711 P.2d at 1293. Here, Sebay was not asked to exit the vehicle until *after* the HPD officers smelled alcohol on her breath and noticed her red, watery and glassy eyes. At that point, there was a reasonable suspicion that Sebay was operating a vehicle while intoxicated based upon her driving; her red, watery and glassy eyes; and the smell of alcohol on her breath. <u>State v. Barrickman</u>, 95 Hawaiʻi 270, 274-77, 21 P.3d 475, 479-82 (App. 2001) (there was reasonable suspicion to investigate driving while intoxicated based on defendant's glassy eyes and smell of alcohol on breath). However, red and glassy eyes alone and imperfect driving are insufficient to establish probable cause to arrest a person for OVUII. <u>State v. Kaleohano</u>, 99 Hawaiʻi 370, 377-78, 56 P.3d 138, 145-46 (2002).

Sebay argues that she was subjected to a custodial interrogation, without being administered a <u>Miranda</u> warning,

because at least two police officers interacted with her in a sustained and coercive manner, inquisitively asking about her destination, late at night in an isolated area with little lighting.

Thus, we must examine whether, under the totality of the circumstances, Sebay's statements stemmed from custodial interrogation.  Sebay was not in custody merely because she was seized in connection with a traffic stop.  State v. Ah Loo, 94 Hawaiʻi 207, 211, 10 P.3d 728, 732 (2000).  To determine whether an interrogation is custodial, the totality of the circumstances analysis focuses on "the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and [any] other relevant circumstances[.]"  Id. at 210, 10 P.3d at 731 (citing State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982)); see also State v. Kazanas, 138 Hawaiʻi 23, 35, 375 P.3d 1261, 1273 (2016) (reiterating same).  In this regard, the supreme court has acknowledged that "no precise line can be drawn" between "custodial interrogation," on the one hand, and "permissible general on-the-scene questioning," on the other.  Ah Loo, 94 Hawaiʻi at 210, 10 P.3d at 731 (citing State v. Patterson, 59 Haw. 357, 362, 581 P.2d 752, 755-56 (1978)) (brackets omitted).  Custodial interrogation is comprised of two components, "interrogation" and "custody."  Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273.  The totality of the circumstances test applies to

6

custodial interrogation, "in the sense that the defendant is deprived of his or her freedom of action in any significant way." Id. In contrast, "the touchstone in analyzing whether 'interrogation' has taken place is whether the police officer 'should have known that his or her words and actions were reasonably likely to elicit an incriminating response from the defendant.'" Id. at 38, 375 P.3d at 1276 (brackets and citation omitted).

In State v. Wyatt, 67 Haw. 293, 687 P.2d 544 (1984), where the defendant was briefly detained and therefore seized, but not in custody or coercively questioned, the supreme court held that Miranda warnings were not required before she was asked if she had been drinking. Wyatt, 67 Haw. at 297-301, 687 P.2d at 548-50. The supreme court further concluded that the SFST that the defendant performed was not constitutionally infirm because the test sought only an exhibition of her physical characteristics of coordination, rather than communications or testimony, even though its purpose was to gather evidence of criminal conduct. Id. at 302-03, 687 P.2d at 551. In Kaleohano, the supreme court noted that if probable cause to arrest or sustained and coercive questioning were present, then questions posed by the police could amount to custodial interrogation. Kaleohano, 99 Hawaiʻi at 377, 56 P.3d at 145. The court concluded that because there was no probable cause to arrest the defendant, and in light of the fact that the officer did not

subject the defendant to sustained and coercive questioning, the officer was not required to give the defendant a <u>Miranda</u> warning prior to asking her if she had been drinking. <u>Id.</u> at 377-78, 56 P.3d at 145-46.

In this case, prior to the administration of the SFST, there was no probable cause to arrest Sebay for OVUII. In addition, the record in this case does not support Sebay's assertion that she was subjected to sustained and coercive questioning and therefore, the District Court erred in concluding that she was not in custody prior to the SFST. Under the totality of circumstances, we cannot conclude that Sebay was in custody when she was asked whether she would agree to participate in an SFST. <u>See</u> <u>id.</u> at 377, 56 P.3d at 145.

"Field sobriety tests are designed and administered to avoid the shortcomings of casual observation." <u>Wyatt</u>, 67 Haw. at 302, 687 P.2d at 551 (brackets and citations omitted). As discussed above, Officer Wong did not initially have probable cause to arrest Sebay for OVUII based upon noticing that she had red, glassy eyes, and an odor of alcohol on her breath. And, the right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against her, such as when a driver is asked to participate in an SFST. <u>Id.</u> As we discussed in <u>State v. Sagapolutele-Silva</u>, CAAP-19-0000491, 2020 WL 1699907 (Haw. App. Apr. 8, 2020), the <u>Wyatt</u>

court held that since performance on an SFST was neither communication nor testimony, the trial court did not err by refusing to suppress the officer's SFST observations. Sagapolutele-Silva, 2020 WL 1699907 at *7 (citing Wyatt, 67 Haw. at 301-03, 687 P.2d at 550-51).

In addition, in Pennsylvania v. Muniz, 496 U.S. 582, 603-04 (1990), the United States Supreme Court rejected the contention that Miranda warnings are required prior to an inquiry as to whether a defendant understood SFST instructions, because the "focused inquiries were necessarily 'attendant to' the police procedure held by the court to be legitimate." Accordingly, asking Sebay whether she understood the instructions to the SFST did not implicate her right against self-incrimination. In Sagapolutele-Silva, we held that the defendant was already in custody, and thus the medical rule-out questions constituted a custodial interrogation because they were likely to elicit an incriminating response. Sagapolutele-Silva, 2020 WL 1699907 at *7-8. Here, however, Sebay was not in custody when she was asked medical rule-out questions and therefore was not thereby subjected to custodial interrogation. Sebay's performance on an SFST was neither communication nor testimony, and the trial court did not err by refusing to suppress the officer's SFST observations. See id. at *7 (citing Wyatt, 67 Haw. at 301-03, 687 P.2d at 550-51). Accordingly, we conclude that the District Court did not err in denying Sebay's motion to suppress.

(2) Sebay's argument that the District Court lacked sufficient evidence to support her conviction for OVUII is based on her argument that the SFST results should have been suppressed. In other words, Sebay argues that if the SFST results had been properly suppressed, the District Court would have lacked substantial evidence to convict her. As we have concluded that the District Court did not err in denying Sebay's motion to suppress, we conclude that this argument is without merit.

Sebay further argues that even if the evidence was properly admitted it would not constitute substantial evidence to support the OVUII conviction in this case. The evidence adduced at trial must be considered in the strongest light for the prosecution. See State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31 (2007). Based on the testimony of the HPD officers in this case, specifically including her deviations in performance from the HPD officer's instructions on the SFST, we conclude that there was substantial evidence supporting the District Court's conclusion that Sebay operated a vehicle "[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty." HRS § 291E-61(a)(1).

For these reasons, the District Court's January 16, 2018 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, June 29, 2020.

On the briefs:

Joanne B. Badua,
Deputy Public Defender,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge