938 P.2d 1190

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Samson PEBRIA, Jr., Defendant–Appellee.**

No. 18473.

Intermediate Court of Appeals of Hawai'i.

April 30, 1997.

James H.S. Choi, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellant.

Jeffrey T. Arakaki, on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

The State of Hawai'i (State) appeals the circuit court's September 29, 1994 Findings of Fact and Order Granting Defendant's Motion to Suppress Statements (September 29, 1994 Order). We affirm.

This case deals with the law governing the admissibility of an incriminating *Miran-dized* [1] statement to the police by the defen-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), mandates that "[w]here an individual is being subjected to custodial interrogation, he may not be asked any questions without his first being advised of his right to remain silent, that anything he says can and will be used against him, ... and that if he cannot afford counsel, one will be appointed for

dant during a subsequent custodial interrogation that followed the defendant's earlier incriminating non-*Mirandized* statement during a prior custodial interrogation. This decision recognizes the federal constitutional law stated in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), but reaffirms our opinion in *State v. Medeiros,* 4 Haw.App. 248, 665 P.2d 181 (1983), as a permissible expression of Hawai'i constitutional law.

## RELEVANT FACTS[2]

On March 17, 1994, Honolulu Police Department (HPD) Officer Samuel Rodriguez (Officer Rodriguez) was dispatched to the Queen's Medical Center on an "initial report [of] an assault." When Officer Rodriguez arrived, HPD Officer Steven Froeschele (Officer Froeschele) was in the lobby area speaking to a female. Defendant Samson Pebria, Jr. (Pebria) was seated and two security guards were standing by him. Officer Froeschele pointed to Pebria, identified him as "the other person involved in the incident," and asked Officer Rodriguez "to go and get his name and his information[.]"

Officer Rodriguez went to Pebria, identified himself as a police officer, and asked Pebria, "Do you know why you're being detained?" Pebria responded, "I went grab the girl." Officer Rodriguez then asked Pebria "questions concerning his name and personal information[.]" During this questioning, Pebria volunteered that he had recently been released from prison.

Subsequently, after Officer Rodriguez was informed by Officer Froeschele that his conversation with the female caused him to believe that the case was a kidnapping case and Officer Rodriguez talked to the female to "reaffirm" that information, Officer Rodriguez returned to Pebria and informed him "that he was now a suspect in a kidnapping case." According to Officer Rodriguez, Pebria responded as follows:

> He sat back on the chair that he was seated on. He placed his right hand next

to the chair that was adjacent to him on the right side. He rocked his head backward. And in a smug look toward me, staring entirely at me, he said the following. Rocking his head back he goes, "I like rape her."

After placing Pebria under arrest, Officer Rodriguez asked him, "Where you planning to go?" Pebria "pointed behind his right, and he said, 'The stairway.' "

It was not until the following day, March 18, 1994, that HPD detective Thomas Edward Jones (Detective Jones) first informed Pebria of his constitutional rights. Pebria then made essentially the same incriminating statements to Detective Jones.

A Complaint filed on April 8, 1994 charged Pebria with two counts of Kidnapping, Hawai'i Revised Statutes (HRS) § 707–720(1)(d) and (e) (1993).

On June 14, 1994, Pebria filed a Motion to Suppress Statements (June 14, 1994 Motion). At the September 19, 1994 hearing, the circuit court orally granted the motion. Its September 29, 1994 Order granted it in writing.

## DISCUSSION

The State challenges the suppression of Pebria's statements of "I went grab the girl" and "I like rape her." The State contends that the first statement "was not a statement made due to any custodial interrogation[,]" and that the second statement "was a spontaneous statement made not in the course of a custodial interrogation." The State concedes that Pebria's response of, "the stairway," to Officer Rodriguez' question was validly suppressed. However, the State contends that "essentially the same incriminating statements made to Detective Jones by [Pebria] were not the fruit of any illegal police conduct on the part of Officer Rodriguez, and also [were] based upon a valid waiver of [Pebria's] constitutional rights."

---

him prior to any interrogation." *State v. Kalai,* 56 Haw. 366, 368, 537 P.2d 8, 11 (1975).

**2.** To the extent that our statement of the relevant facts is different from the circuit court's September 29, 1994 Findings of Fact, the latter are clearly erroneous.

### 1.

The first question is whether Pebria's first statement, "I went grab the girl[,]" was uttered during an investigative stop or a custodial interrogation. This is a question of law. *State v. Miller*, 4 Haw.App. 603, 671 P.2d 1037 (1983). We conclude that Pebria uttered this statement during a custodial interrogation.

The following quote best explains the difference between an investigative stop and a custodial interrogation.

No precise line can be drawn because each case must necessarily turn upon its own facts and circumstances, but we think that the California court in *People v. Manis*, 268 Cal.App.2d 653, 669, 74 Cal.Rptr. 423, 433 (1969) came as close as any to delineating, generally, the outer parameters beyond which on-the-scene interviews may not proceed without the *Miranda* warnings:

[P]ersons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and becomes sustained and coercive.

In this case the police were responding to a report of a possible burglary on the premises. Other than the report, the police were not in possession of facts indicating that a burglary had in fact been committed or that it was in progress. Immediately upon their arrival, the police found nothing to verify the report. The presence of the defendant in the driveway, while strengthening their suspicions, did not constitute confirmation that the crime had been committed or was being committed. In the exercise of their investigatory functions, they were required to determine on the spot whether criminal activity was afoot, and whether they should arrest the defendant, or whether they should investigate further, or whether they should take no action against him. A temporary detention, coupled with a minimum amount of questioning, was proper and obviously necessary under the circumstances to assist the police officers in making these determinations. In *United States v. Hickman*, 523 F.2d 323, 327 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639, the court said:

An officer making an investigatory stop will often have some suspicion of the identity of the person apprehended and of his prior unobserved activity. It is the very purpose of the investigatory stop to allow the officer to confirm or deny these suspicions by reasonable questioning, rather than forcing in each instance the "all or nothing" choice between arrest and inaction.

*State v. Patterson*, 59 Haw. 357, 362–63, 581 P.2d 752, 756 (1978).

In determining whether an officer's questions constitute interrogation, the test is whether the officer should have known that his words and actions were reasonably likely to elicit an incriminating response from the defendant. *Rhode Island v. Innis*, 446 U.S. [291] at 301 [100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980)].

*State v. Paahana*, 66 Haw. 499, 503, 666 P.2d 592, 595–96 (1983).

It has been held that interrogation does not occur

when the question is very general in nature, not directed at one particular person, obviously asked before there has been any sorting of suspects from witnesses, apparently asked about a seemingly innocuous matter not directly related to the police intervention, obviously spontaneous in nature, or seemingly a natural question anyone would ask given defendant's condition or other unusual circumstances.

1 W. LaFave and J. Israel, *Criminal Procedure*, § 6.7(b) (1984) (citations omitted).

In Pebria's case, the initial question, "Do you know why you're being detained?" did not qualify under any of the noninterrogation categories noted above. Under the circumstances, the question in essence asked Pebria, "Do you know that you are being detained because the woman talking to Officer

Froeschele is accusing you of assaulting her?" We agree with the circuit court's conclusion that the question was interrogation because Officer Rodriguez should have known that it was reasonably likely to elicit an incriminating response from Pebria.

**2.**

■ The State contends that the second statement, "I like rape her[,]" was a spontaneous statement made not in the course of a custodial interrogation. We disagree. It was made in the course of a custodial interrogation.

**3.**

■ The State contends that because Pebria repeated his incriminating statements to Detective Jones after Pebria was *Mirandized* and waived his constitutional rights, the repeated statements were not the fruit of any illegal police conduct. The law applicable in Hawai'i is as follows:

As applied to confessions, the "fruit of the poisonous tree" doctrine holds that where one confession or admission is illegally obtained and subsequently the defendant makes a further confession, the second confession is inadmissible in evidence as a "fruit of the poisonous tree" if it results from an exploitation of the prior illegality.

However, a confession made subsequent to an inadmissible one is not automatically inadmissible. Where a confession has been illegally obtained, the government will not be allowed to introduce into evidence a subsequent confession unless it first demonstrates that the latter was not obtained by exploiting the initial illegality or that any connection between the two had become so attenuated that the taint was dissipated.

*State v. Medeiros,* 4 Haw.App. 248, 252, 665 P.2d 181, 184 (1983) (citations and footnotes omitted).

■ The circuit court's September 29, 1994 Order finds and concludes that the subsequent *Mirandized* confession was obtained by exploiting the initial illegality. The September 29, 1994 Order states in relevant part as follows:

## FINDINGS OF FACT

* * *

15. Then on or about March 18, 1994, at approximately noon or shortly thereafter [Pebria] was interrogated at the Honolulu Police Department by Detective Jones and the interview took approximately an hour, which the Court viewed in its entirety.

16. That [Pebria] was Mirandized and apprised of his constitutional rights.

* * *

19. That although there appears to have been some confusion, the confusion did not appear to arise from the questioning occurring at the time, but confusion because of [Pebria's] inability to recall what occurred previously because at the time of the incident he was under the influence of ice.

20. That the Court's impression is that throughout the questioning by Detective Jones, particularly toward the end of the questioning, the detective was apparently aware of the alleged spontaneous statements of [Pebria] and attempted diligently to get [Pebria] to say that the reason he detained or held on to the complaining witness was to rape her.

21. That it appeared that the detective was leading [Pebria] into making that admission based on the detective's information of [Pebria's] prior statement.

22. That the detective himself on the tape made reference to Sgt. Rodriguez' report and reminded [Pebria] of those spontaneous statements.

* * *

## CONCLUSIONS OF THE COURT

* * *

Furthermore, the problems Officer Rodriguez had in failing to advise [Pebria] of his constitutional rights carried over into the formal statement with Detective Jones, because Detective Jones relied on those

**176**

statements to Officer Rodriguez in conducting his interview. And so the Court believes that the statements made to Officer Rodriguez must be suppressed, because [Pebria] was not properly advised of his constitutional rights and the formal statement must also be suppressed, because it is a fruit of the prior illegality.

These findings are not clearly erroneous and the conclusion is not wrong.

Subsequent to *Medeiros,* the United States Supreme Court held in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), as follows:

> We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

*Oregon v. Elstad,* 470 U.S. at 314, 105 S.Ct. at 1296, 84 L.Ed.2d at 235.

> We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings.

*Id.* at 318, 105 S.Ct. at 1298, 84 L.Ed.2d at 238.

■ The court's statement of the question in *Oregon v. Elstad* indicates that it held that the Self–Incrimination Clause of the Fifth Amendment does not require the suppression of a confession, made after proper *Miranda* warnings and a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the defendant. 470 U.S. at 303, 105 S.Ct. at 1290, 84 L.Ed.2d at 228. This holding of *Oregon v. Elstad* is not incompatible with *Medeiros.* However, *Oregon v. Elstad* contains *dicta* that is contrary to *Medeiros.* The first and third of the following quotes are examples.

> Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

*Id.* at 309, 105 S.Ct. at 1293, 84 L.Ed.2d at 232.

> The failure of police to administer *Miranda* warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised.

*Id.* at 310, 105 S.Ct. at 1293, 84 L.Ed.2d at 233.

> When neither the initial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder.

*Id.* at 312, 105 S.Ct. at 1294–95, 84 L.Ed.2d at 234.

We disagree with the *dicta* in *Oregon v. Elstad.* We agree with Justice Brennan's comment in his dissent that:

> [t]he Court's marble-palace psychoanalysis is tidy, but it flies in the face of our own precedents, demonstrates a startling unawareness of the realities of police interrogation, and is completely out of tune with the experience of state and federal courts over the last 20 years. Perhaps the Court has grasped some psychological truth that has eluded persons far more experienced in these matters; ·if so, the Court owes an explanation of how so many could have been so wrong for so many years.

*Id.* at 324, 105 S.Ct. at 1301, 84 L.Ed.2d at 242.

In *United States v. Polanco,* 93 F.3d 555 (9th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996), the Ninth Circuit Court followed some but not all of the *dicta* in *Oregon v. Elstad,* and stated the law as follows:

To determine whether a Mirandized statement following an earlier, non-Mirandized statement is admissible under *Elstad*, courts must ask whether: (1) the initial, non-Mirandized statement was voluntary and (2) the subsequent, Mirandized statement was "knowingly and voluntarily made." In evaluating whether the suspect's subsequent, Mirandized statement was made knowingly and voluntarily, "the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect." Voluntariness is "a totality of circumstances" inquiry, and depends on such factors as "the surrounding circumstances, the combined effect of the entire course of the officer's conduct upon the defendant, including the effect of his previously having made a confession, and the manner which the officers utilized this prior confession in obtaining a second confession."

*Id.* at 560–61 (citations omitted).

In other words, *United States v. Polanco* incorporated the inquiry whether the subsequent *Mirandized* statement was a fruit of the poisonous tree into the inquiry whether the subsequent *Mirandized* statement was knowingly and voluntarily made.

 We are not bound to follow *United States v. Polanco*. *State v. Simeona*, 10 Haw.App. 220, 237, 864 P.2d 1109, 1117 (1993). Although we are not permitted to afford the defendant less rights than are afforded by the holding of *Oregon v. Elstad*, we are not required to comply with its *dicta*. Moreover, we are not subject to the problem the Ninth Circuit Court faced when it decided *United States v. Polanco*. We are permitted to "extend the protections of the Hawaii [Hawai'i] Bill of Rights beyond those of textually parallel provisions in the Federal Bill of Rights when logic and a sound regard for the purposes of those protections have so warranted." *State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58 (1974).

*Medeiros* affords greater protection to the defendant than does *Oregon v. Elstad*. In our view, the *Medeiros* test is preferable to the *Oregon v. Elstad* test because, although both cases recognize the knowing and voluntary issue, *Oregon v. Elstad* intentionally ignores the fruit of the poisonous tree issue. Therefore, we reaffirm our holding in *State v. Medeiros, supra*.

## CONCLUSION

Accordingly, we affirm the circuit court's September 29, 1994 Findings of Fact and Order Granting Defendant's Motion to Suppress Statements.