## STATE OF HAWAII, Plaintiff-Appellee *v*. RENNY KALAI, Defendant-Appellant

### NO. 5582

### JUNE 18, 1975

RICHARDSON, C.J., KOBAYASHI, MENOR, JJ., and
KATO, Circuit Judge, in place of OGATA, J.,
Disqualified, and FONG, Circuit Judge,
Assigned by Reason of Vacancy

OPINION OF THE COURT BY MENOR, J.

The defendant-appellant was tried and convicted for the offense of murder. Prior to trial he moved to suppress the use in evidence against him of a pair of reddish-brown high-heeled boots and a .12-gauge shotgun. His motion was denied, and following a trial by jury he was convicted and sentenced to life imprisonment for the offense. The defendant appeals, contending that the trail judge improperly denied his motion to suppress. At issue is the validity of the search warrant and the manner in which it was executed by the police.

I

It is a mandate of constitutional and statutory law that no warrant may issue except upon probable cause, supported by oath or affirmation. U.S. Const. amend. IV; Hawaii Const. art. 1, §5; HRS § 708-33.

Warrants for the defendant's arrest and for the search of his premises were issued simultaneously at 9:25 p.m. on June 11, 1973. The defendant contends that the affidavit presented to the district judge in support of the search warrant failed to show the existence of the probable cause necessary for its issuance. We agree. Contemporaneously presented to the magistrate, however, was the affidavit supporting the issuance of the warrant for the arrest of the defendant. On the strength of both affidavits, the district judge issued his search warrant. In this the court did not err. Where two closely related affidavits, referring to the same individual and the same criminal charge, are presented to the issuing magistrate simultaneously, he may consider both for the purpose of ascertaining the existence of probable cause. *United States v. Nolan*, 413 F.2d 850 (6th Cir. 1969); *United States v. Bozza*, 365 F.2d 206 (2d Cir. 1966). *Cf. United States v. Horton*, 503 F.2d 810 (7th Cir. 1974); *United States v. Permisohn*, 339 F.Supp. 52 (S.D.N.Y. 1971).

And when facts contained in an affidavit for a search warrant, taken together with all reasonable inferences from

those facts, support the existence of probable cause, the validity of the warrant will be upheld, even though other inferences from the facts might point to a different conclusion. *State v. Austria,* 55 Haw. 565, 524 P.2d 290 (1974).

II

The defendant further objects to the consideration by the district judge of some of the allegations contained in the affidavits, to wit: That on June 10, 1973, the police officer went to the home of the defendant to inquire about the shooting; that "the said RENNY KALAI stated he did not return to the Pali Lanes after leaving the said Pali Lanes on June 8, 1973, at about 9:10 p.m.; that your affiant asked the said RENNY KALAI what he wore on the said Friday night; that the said RENNY KALAI stated he wore a dark purple bowling shirt, dark blue jeans and reddish-brown high-heeled boots; that the said RENNY KALAI pointed to a pair of reddish-brown high-heeled boots which were located near a stairway and stated that those are [*sic*] the boots he wore to the bowling alley."

The defendant objects on the ground that the investigation had already focused upon the defendant and that no questions touching upon the shooting should have been asked without first giving him his *Miranda* warnings. This objection is without merit.

Where an individual is being subjected to custodial interrogation, he may not be asked any questions without his first being advised of his right to remain silent, that anything he says can and will be used against him, that he has the right to have his attorney present, and that if he cannot afford counsel, one will be appointed for him prior to any interrogation. *Miranda v. Arizona,* 384 U.S. 436, 467-474 (1966); *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way.*" 384 U.S. at 444. (Emphasis added)

The *Miranda* rule is not confined to the station house setting, and it does not lose its relevancy simply because the interrogation takes place in familiar surroundings. *Orozco v. Texas*, 394 U.S. 324 (1969). What constitutes custodial interrogation outside of the police station, however, necessarily depends upon the circumstances of the particular case; and whether the compulsive factors with which *Miranda* was concerned are present must be determined from the totality of the circumstances. *United States v. Montos*, 421 F.2d 215, 222-223 (5th Cir. 1970), *cert. denied*, 397 U.S. 1022 (1970). One important factor is the degree to which the investigation has focused upon a specific individual, for once a particular individual becomes a prime suspect, he must be advised of his constitutional rights before any attempt is made to interrogate him. *United States v. Phelps*, 443 F.2d 246 (5th Cir. 1971).

We are satisfied that the defendant was not subjected to custodial interrogation. The record reveals that the shooting occurred in the early morning hours of Saturday, June 9, 1973. Later that morning a young eyewitness gave Officer Kruse a physical description of the assailant, as well as the type of clothing and shoes he was wearing. The witness had seen the assailant before at the Pali Lanes, but she did not know him by name. She also told the detective that she had seen the assailant beating a woman outside of the bowling alley. The next day, Sunday afternoon, the officer received information from the victim's family that the woman beaten was possibly a Trudy Reinhart or a Trudy Kalai and that it may have been either her boy friend or her husband who had committed the assault. No mention of the defendant by name was made by the victim's family. The officer thereafter ascertained from the manager of the Pali Lanes that Renny Kalai and Trudy Kalai had bowled there Friday evening and were together the night of the shooting, and that Renny Kalai was either Trudy's boy friend or husband. This was the extent of the relevant information possessed by Officer Kruse at the time he interviewed the defendant at his home on June 10, 1973.

It would have been logical for the officer to suspect that the defendant might have been involved in the shooting, but the process of inquiry was still in its preliminary stages and had not yet sufficiently zeroed in on the defendant. As the officer characterized it, the defendant was then only a "possible" suspect. *Compare, United States v. Phelps, supra.* Positive identification was not made by the eyewitness until the day following the interview, and the warrants were not issued until the evening of June 11, 1973. Quite frequently, the police must engage in an investigatory process of elimination, which oftentimes has the added salutary effect of removing the cloud of suspicion over the innocent while narrowing the field down towards the real perpetrator of the offense.

Moreover, the police did not conduct their investigation in a coercive atmosphere or in an overbearing manner. The two officers who went to his home were met at the door by the defendant. They advised him that they had come to find out what he knew about the shooting of Arthur Mahoe. He told them not to get him involved, but choosing not to talk to them at the door where they might be overheard by inquisitive neighbors, he invited the officers into his home. This was altogether a voluntary act on his part. He was under no compulsion to let them in or to speak to them, and there was no insistence by the police that they be allowed into his home. The defendant's wife was present. He spoke to the officers freely. He disclaimed any knowledge of the shooting, and told the police that while he had been at the Pali Lanes and was wearing dark clothing and reddish-brown high-heeled boots, which he voluntarily pointed out to the officers, he had left the bowling alley at 9:10 p.m. on the evening of June 8, 1973, and did not return at any time thereafter. This placed the defendant outside of the time and place of the shooting, but no attempt was made to interrogate him further on this particular point. No questions were asked which might have been calculated to elicit admissions placing him at the scene at the time the shooting occurred. Neither were any questions asked him relative to his ownership of a firearm that might have been used in the commission of the offense. The police left soon thereafter.

But even if we were to disregard the contested allegations completely, the remaining representations nevertheless furnished a sufficient factual basis for the district judge to issue his warrant.

When considered together and read in a common sense and realistic fashion, and not in a hypertechnical manner, *United States v. Ventresca*, 380 U.S. 102 (1965), there emerge from the affidavits the following remaining allegations: That in the early morning hours of June 9, 1973, in the Pali Lanes parking lot in Kailua, the victim, Arthur Mahoe, was shot and killed; that an autopsy revealed the cause of death to have been hemorrhage due to a shotgun wound of the aorta; that one Patricia Medeiros was an eyewitness to the shooting; that she had seen the assailant before at the Pali Lanes; that she had observed the assailant wearing dark clothing and a pair of reddish-brown high-heeled boots at the time of the shooting; that on June 11, 1973, she made positive identification of the assailant from a group of police photographs fitting the general description of the defendant; that the alleged assailant was the defendant, Renny Kalai; that the defendant resided at 1019-A Kamau Place, in the district of Honolulu.

Absolute certainty that the objects for which the search warrant is issued are where they are alleged to be is not required; nor is it ever necessary that the affiant be in possession of information sufficient to convict. *Porter v. United States*, 335 F.2d 602 (9th Cir. 1964), *cert. denied*, 379 U.S. 983 (1965). It is enough that factual representations are made from which the issuing magistrate could reasonably infer that the objects of the search are where they are alleged to be. *See United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970); *Clemas v. United States*, 382 F.2d 403 (8th Cir. 1967); *State v. Bastida*, 271 So.2d 854 (Sup. Ct. La. 1973).

III

Of more serious import is the question of whether the execution of the search warrant at 9:50 p.m. on June 11, 1973, invalidated the search.

Rule 41(c) of the Hawaii Rules of Criminal Procedure provides in pertinent part:

> The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time.

While the warrant authorized a search of the premises in the daytime or the nighttime, the affidavits, with respect to the shotgun, were without the positivity required by the rule. The shooting occurred in the early morning hours of June 9th. The search warrant was issued in the evening of June 11th. The fact that the defendant resided on the premises was not enough to supply the positivity required. *See United States v. Smith*, 340 F.Supp 1023, 1028-29 (D.Conn. 1972).

Any official intrusion is necessarily an invasion of privacy, and the sanctity of the home is jealously guarded by the law. Nighttime searches are considered particularly abrasive, even when made pursuant to a judicially issued search warrant. *Jones v. United States*, 357 U.S. 493 (1958). Hence, a search warrant that is to executed at night requires a showing of a somewhat higher standard than probable cause for its issuance. *United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970), *cert. denied*, 400 U.S. 834 (1970); *United States v. Smith, supra*.

None of the circumstances surrounding the execution of the search warrant in this case, however, were peculiarly abrasive or particularly shocking to the conscience. Arrest and search warrants were issued contemporaneously by the district judge at 9:25 p.m. The officers arrived at the defendant's residence at 9:50 p.m.[1] with both warrants and entered lawfully pursuant to the arrest warrant. The recovery of the boots and shotgun was made shortly thereafter. There was no indiscriminate searching of the premises for the articles mentioned in the search warrant. The boots were in the

---

[1] Rule 41 of the Federal Rules of Criminal Procedure, after which the Hawaii Rules was patterned, was amended in 1972 to define "daytime" to be the period between 6:00 a.m. and 10:00 p.m. No such change has been made in the Hawaii Rules of Criminal Procedure.

same location as on the officers' previous visit, and the defendant himself pointed out the location of the shotgun. The seizure of the articles was accomplished in a manner not unduly disturbing to the other occupants of the household. The defendant's wife was allowed to complete the process of putting their children to bed.

Under the unique circumstances of this case, where the officers were lawfully on the premises by virtue of a warrant for the defendant's arrest, and there was neither an indiscriminate search of the premises for the articles mentioned in the search warrant, nor an undue disturbance of the occupants of the house, the execution of the search warrant at the time in question was at best harmless error. H.R.Cr.P. 52. *See United States v. Ravich, supra. Cf. United States v. Woodring,* 444 F.2d 749 (9th Cir. 1971); *United States v. Joseph,* 278 F.2d 504 (3d Cir. 1960), *cert. denied,* 364 U.S. 823 (1960); *United States v. Becker,* 334 F. Supp. 546 (S.D.N.Y. 1971).

Affirmed.

*Gordon Uechi* and *Renee M.L. Yuen,* Deputy Public Defenders (*Donald K. Tsukiyama,* Public Defender, with them on the briefs) for defendant-appellant.

*Douglas H. Ige,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with him on the brief) for plaintiff-appellee.