**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000751
30-OCT-2020
08:09 AM
Dkt. 59 MO**

NO. CAAP-18-0000751

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
NICOLAS MICHAEL LEE, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(Case No. 1DTA-17-02929)

**MEMORANDUM OPINION**
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Nicolas Michael Lee (**Lee**) was convicted of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2016).[1] Lee appeals from the "Notice of Entry of Judgment and/or Order and Plea/Judgment[,]" entered on July 25, 2018, and the "Notice of Entry of Judgment and/or Order and Plea/Judgment[,]" entered on September 21, 2018 (together, **Judgment**), by the District Court of the First Circuit, Honolulu Division.[2] Lee contends that the district court erred by:

---

[1] HRS § 291E-61 provides, in relevant part:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[2] The Honorable William M. Domingo presided.

(1) denying his motion to suppress evidence; (2) failing to conduct a proper Tachibana[3] colloquy; (3) convicting him based on insufficient evidence; and (4) failing to engage him in a colloquy before accepting the parties' stipulation to a witness's qualifications to administer the standard field sobriety test (**SFST**).  We hold that the district court should have suppressed Lee's responses to the SFST medical rule-out questions.  Accordingly, we vacate the Judgment.  Because we also hold that substantial evidence supported Lee's conviction, we remand for a new trial.

### 1.    The district court erred by denying Lee's motion to suppress in total.

We review a trial court's ruling on a motion to suppress de novo to determine whether it was "right" or "wrong." State v. Edwards, 96 Hawaiʻi 224, 231, 30 P.3d 238, 245 (2001) (citation omitted).  In so doing, we review "the record of the hearing on the motion to suppress and the record of the trial." State v. Vinuya, 96 Hawaiʻi 472, 481, 32 P.3d 116, 125 (App. 2001) (citations omitted).

Lee first argues that State v. Tsujimura, 140 Hawaiʻi 299, 400 P.3d 500 (2017), mandates the suppression of his "post-seizure non-verbal communicative responses (i.e[.] his physical performance on the SFST)."  In that case, Tsujimura was charged with OVUII.  At trial, a police officer testified that Tsujimura said he had an old knee injury before taking the SFST.  The State asked the officer whether Tsujimura said, while getting out of his car after being stopped, that he could not get out of the car because of an old knee injury.  Over defense counsel's objection, the officer responded that "[n]o statements were made." Id. at 305, 400 P.3d at 506 (emphasis omitted).  The obvious inference was that Tsujimura's performance on the SFST was the result of intoxication, not an old knee injury.  The supreme court held that Tsujimura's silence — not saying he had a knee injury while getting out of his car — was improperly admitted into evidence

---

[3]    Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995).

and was used as substantive proof of guilt.  Id. at 316-17, 400 P.3d at 517-18.  Tsujimura does not support the proposition that a defendant's physical performance on the SFST is a "non-verbal communicative response."  Rather, the supreme court has held that a defendant's performance on the SFST "does not constitute incriminating statements[ because] when conducting an [S]FST the State does not seek 'communications' or 'testimony,' but rather, 'an exhibition of physical characteristics of coordination.'" State v. Uchima, 147 Hawai'i 64, 84, 464 P.3d 852, 872 (2020) (citing State v. Wyatt, 67 Haw. 293, 303, 687 P.2d 544, 551 (1984) (cleaned up)).  Lee's reliance on Tsujimura is misplaced.

Lee next argues that he "was subjected to 'custodial interrogation' by the [police] prior to and during the SFST and was not advised of his Miranda[4] rights[.]"  Before being subjected to custodial interrogation, a person must be advised of their right to remain silent, that anything they say can and will be used against them, that they have the right to an attorney, and that if they cannot afford an attorney one will be appointed for them before they are questioned.  State v. Kalai, 56 Haw. 366, 368, 537 P.2d 8, 11 (1975) (citing Miranda).  "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [their] freedom of action in any significant way." Id. (emphasis omitted) (citing Miranda).

To determine whether an interrogation was custodial, we "look to the totality of the circumstances, focusing on the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and any other relevant circumstances."  State v. Ah Loo, 94 Hawai'i 207, 210, 10 P.3d 728, 731 (2000) (cleaned up) (citations omitted).  Relevant circumstances include "whether the investigation has focused on the suspect and whether the police have probable cause to arrest [them] prior to questioning[.]"  Id. (citations omitted).

---

4    Miranda v. Arizona, 384 U.S. 436 (1966).

In this case, Honolulu Police Department (**HPD**) officer Daymon Carr testified that he was on duty early on July 28, 2017. He was driving a marked police vehicle east on King Street, toward the Keʻeaumoku Street intersection. He had the green light. He saw a pickup truck headed mauka on Keʻeaumoku Street, approaching King Street. The truck stopped suddenly before the intersection; its front tires were past the stop line, in the crosswalk. Officer Carr circled the block and stopped behind the truck on Keʻeaumoku Street. When the light turned green the truck went through the intersection, changed lanes without signaling, and cut off another vehicle. The other vehicle had to come to almost a complete stop to avoid a collision.

The truck then turned left, onto South Beretania Street "at a higher rate of speed[.]" During the turn the truck tilted up toward the passenger side and crossed "all lanes of traffic" on South Beretania Street, into the fifth, rightmost lane. The truck changed lanes and "sped up right behind, coming very close to" an SUV, which it followed "very closely" for up to 200 feet before both vehicles turned right. The SUV moved to the second lane and stopped at the traffic light. The truck was in the right lane, to the left of the SUV. The truck slowed down, then "at an angle," went "straight towards the[] . . . back right side bumper of the SUV[.]" The truck stopped suddenly, partially in two lanes, "very close" to the SUV. Officer Carr thought the truck was going to hit the SUV. After the light turned green and the SUV moved ahead, Officer Carr stopped the truck.

When Officer Carr approached the truck he saw Lee in the driver's seat, someone in the passenger seat, and another person asleep in the truck bed. Officer Carr informed Lee why he had been stopped and asked for Lee's license, which Lee provided. Officer Carr testified that Lee "kind of like had a blank stare, kind of lost" and had "red, watery, glassy eyes." Officer Carr smelled a "strong odor of an alcoholic-type beverage coming from the vehicle[,]" and from Lee's breath. Lee's red, watery, and glassy eyes, and the odor of alcohol, indicated to Officer Carr that Lee may be operating the truck under the influence of alcohol.

Officer Carr asked if Lee was willing to participate in an SFST. Lee agreed, and Officer Carr asked Lee to exit the truck and walk to the sidewalk. As he got out of the truck, Lee "kind of stumbled backwards, regained his balance, and kind of stood there." Officer Carr reminded Lee to walk to the sidewalk, but instead of turning to walk, Lee "kind of walked sidewards while facing his truck[.]" Once Lee was behind the truck, he walked forward to the sidewalk.

Once on the sidewalk, Officer Carr asked Lee the medical rule-out questions.[5] Lee responded "no" to each question. Officer Carr instructed Lee how to perform the SFST.[6] While receiving instructions for the walk-and-turn test, Lee was unable to keep his balance and began walking prematurely at least three times. Officer Carr asked if Lee understood the instructions or had any questions. Lee indicated he understood and did not have questions.

During the walk-and-turn test, Lee only took 8 of the 9 steps. He stepped off the line on each step, and raised his arms to shoulder height instead of keeping them at his side. He failed to perform the turn correctly, and stumbled backwards. After turning he walked 9 steps, but missed heel-to-toe on each step.

Officer Carr testified that during the one-leg stand test, Lee:

> started off with his right foot, he raised it for like -- counted for a few seconds, placed it down, raised his left foot, counted for a few seconds, placed it down, and then raised his right foot, and then it continued between his right foot for a couple of seconds, then his left foot for a couple of seconds, and going back and forth throughout the 30 seconds.

Lee swayed side-to-side and raised his arms throughout the test. Lee was arrested for OVUII.

---

[5] The medical rule-out questions are whether the suspect (1) had any speech impediments or physical defects, (2) was diabetic or epileptic, (3) was taking any medication, (4) was under the care of a doctor or dentist, (5) was under the care of an eye doctor, (6) had an artificial eye, or (7) was wearing contact lenses.

[6] Officer Carr testified that the SFST is comprised of the Horizontal Gaze Nystagmus test, the Walk-and-Turn test, and the One-Leg Stand test.

Lee contends that he was in custody when he was first stopped because Officer Carr had probable cause to arrest him for reckless driving.[7]  We agree.  We hold under the totality of these circumstances, Officer Carr had probable cause to arrest Lee for reckless driving when Lee was stopped; a person of reasonable caution would have been warranted in believing that Lee had a conscious awareness that his driving had posed a substantial and unjustifiable risk to the safety of others and property.  See State v. Agard, 113 Hawai'i 321, 151 P.3d 802 (2007).

Because Lee was in custody, Officer Carr should have given him Miranda warnings before any interrogation. See State v. Sagapolutele-Silva, 147 Hawai'i 92, 100, 464 P.3d 880, 888 (App. 2020), cert. granted, No. SCWC-19-0000491 (Haw. Sept. 16, 2020). Because the Miranda warnings were not given, Lee's responses to the medical rule-out questions should have been suppressed.  Id. at 102-03, 464 P.3d at 890-91; cf. Uchima, 147 Hawai'i at 84, 464 P.3d at 872 (noting that where "the district court specifically ruled at the conclusion of the suppression hearing that the answers to the medical rule-out questions 'would have no probative value, no inculpatory or exculpatory value' in the trial[,] . . . in essence, the district court granted the defense's motion to suppress as to the medical rule-out questions[.]").[8]  However, the district court did not err by denying suppression of Lee's agreement to participate in the SFST and statements that he understood the SFST instructions and had no questions, Uchima, 147 Hawai'i at 84, 464 P.3d at 872, or Officer Carr's observations of Lee's performance on the walk-and-turn and one-leg stand tests, id. at 84-85, 464 P.3d at 872-73.

---

[7]    A person who "operates any vehicle . . . recklessly in disregard of the safety of persons or property is guilty of reckless driving."  HRS § 291-2 (2007).

[8]    The State does not argue that admission of Lee's answers to the medical rule-out questions, even if erroneous, was harmless beyond a reasonable doubt.

### 2. <u>**Tachibana**</u> **colloquy.**

We need not decide Lee's second point of error —
whether the district court failed to conduct a proper <u>Tachibana</u>
colloquy — because we are vacating the Judgment and remanding for
a new trial.

### 3. **Substantial evidence**
   **<u>supported Lee's conviction.</u>**

"The double jeopardy clause of article I, section 10 of
the Hawai'i Constitution requires a[n] appellate court to address
a defendant's express claim of insufficiency of the evidence
prior to remanding for a new trial based on trial error."  <u>State
v. Sheffield</u>, 146 Hawai'i 49, 61, 456 P.3d 122, 134 (2020)
(citation omitted).  When reviewing the sufficiency of evidence
on appeal, we apply the following deferential standard of review:

> [E]vidence adduced in the trial court must be
> considered in the strongest light for the prosecution
> when the appellate court passes on the legal
> sufficiency of such evidence to support a conviction;
> the same standard applies whether the case was before
> a judge or jury.  The test on appeal is not whether
> guilt is established beyond a reasonable doubt, but
> whether there was substantial evidence to support the
> conclusion of the trier of fact.

<u>State v. Kalaola</u>, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010)
(citation omitted).  "'Substantial evidence' . . . is credible
evidence which is of sufficient quality and probative value to
enable a person of reasonable caution to support a conclusion."
<u>Id.</u> (citation omitted).  We hold that the admissible testimony
from Officer Carr, when viewed in the light most favorable to the
State, was sufficient to support Lee's OVUII conviction.

### 4. **The district court was not required**
   **to colloquy Lee about his stipulation**
   **<u>to Officer Carr's qualifications.</u>**

Lee contends the district court erred by failing to
engage him in a colloquy before accepting the parties' stipula-
tion, during the hearing on Lee's motion to suppress and during
trial, that Officer Carr (1) was trained by HPD, in conformance
with National Highway Traffic Safety Administration requirements,

to administer and evaluate the SFST, including the Horizontal Gaze Nystagmus test, the Walk-and-Turn test, and One-Leg Stand test; and (2) would not testify about any nystagmus or "any pass or fail," but would testify about "what he was trained to look for" when administering the SFST and his observations of Lee's performance.  The district court was not required to engage Lee in a colloquy to determine whether he approved the stipulation. State v. Wilson, 144 Hawaiʻi 454, 464-65, 445 P.3d 35, 45-46 (2019) (holding that a colloquy was not required where the defendant's attorney stipulated to a police officer's qualifications to conduct an SFST).

For the foregoing reasons, we vacate the "Notice of Entry of Judgment and/or Order and Plea/Judgment[,]" entered on July 25, 2018, and the "Notice of Entry of Judgment and/or Order and Plea/Judgment[,]" entered on September 21, 2018, and remand this case to the district court for a new trial.

DATED:  Honolulu, Hawaiʻi, October 30, 2020.

On the briefs:

Stephen K. Tsushima,
for Plaintiff-Appellee.

Alen M. Kaneshiro,
for Defendant-Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge